UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
*******************************
                              *
Mark M. Mason,                *
        Plaintiff             *
                              *
v.                            *        COMPLAINT
                              *        Jury Trial Requested
FMH Health Services, LLC      *
        Defendant             *
                              *
*******************************
```

NOW COMES the plaintiff Mark M. Mason, by and through his attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

## I. Parties

1. The plaintiff Mark M. Mason is a former employee of Frisbie Memorial Hospital and resides at 57 Forest Street, Wakefield, New Hampshire.

2. The respondent FMH Health Services, LLC (FMH) is a Delaware limited liability company with a principal place of business at One Park Plaza, Nashville, Tennessee. FMH owns and operates Frisbie Memorial Hospital (Frisbie) and is the successor-in-interest to Mr. Mason's former employer, succeeding to the assets and liabilities of Mr. Mason's former employer during the time period Mr. Mason was employed at Frisbie.

## II. Jurisdiction and Venue

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331. The Court has personal jurisdiction over the defendant because it transacts business within the State.

4. Venue is proper because the acts and omissions giving rise to this action occurred within this judicial district.

1

## III. Facts

5. Mr. Mason began employment with Frisbie as a Master's degree-level case manager effective on or about October 18, 2004. Mr. Mason obtained his Master's degree in Human Services in 1992 from Springfield College.

6. Mr. Mason was qualified for his position and performed his job well, as reflected by his performance evaluations through most of his career at Frisbie. The defendant rated Mr. Mason overall as exceeding expectations in his January, 2013, performance evaluation. Mr. Mason's supervisor at the time, Arlene Steinbruek, commented in part that he "(c)onsistently complete(d) and document(ed) assessments in a timely manner with accuracy and detail." As a result of this laudatory performance assessment, Mr. Mason received a merit pay increase for 2013.

7. Mr. Mason also exceeded expectations in his January, 2014, performance review. Ms. Steinbruek wrote that Mr. Mason "consistently complete(d) assessments on time with attention to detail providing information that proves useful to other clinical users." Ms. Steinbruek further commented that Mr. Mason went "the extra mile to coordinate plans with patients and families while keeping nursing and other staff in the loop." Mr. Mason again received a merit pay increase based on his 2014 performance evaluation.

8. Mr. Mason received another merit pay increase after his January, 2015, performance review, in which he met or exceeded expectations in all categories in which Frisbie rated him.

9. Carol Pray became Mr. Mason's supervisor on or about September 28, 2015. Mr. Mason was the only male employee in the defendant's Case Management Department when Ms. Pray assumed the role of his supervisor.

10. Mr. Mason had not reported to Ms. Pray long when she began subjecting him to discipline. Ms. Pray summoned Mr. Mason to a "counseling interview" on or about December 16, 2015. Ms. Pray faulted Mr. Mason for "multiple incidents of not demonstrating basic and essential case management standards and practices," though she failed to identify any specific instance in which Mr. Mason had somehow failed to meet such "basic and essential case management standards and practices."

11. Mr. Mason advised Ms. Pray that he was surprised by her criticisms, and that he did not agree with them, but that he would work on improvement.

12. In or around March of 2016, Ms. Pray spearheaded a so-called "reorganization" that demoted Mr. Mason's position from a Master's degree-level position to a Bachelor's degree-level position. Mr. Mason was the only Master's degree-level case manager impacted by Ms. Pray's action. At Ms. Pray's initiative, the defendant diminished Mr. Mason's position from "Master's Degree—Social Worker" to "Bachelor's Degree—Social Worker," notwithstanding that Mr. Mason holds a Master's Degree. Ms. Pray's action prevented Mr. Mason from receiving further salary increases.

13. Frisbie has attempted to identify Liza Hutton as another employee affected by the so-called "reorganization," but Ms. Hutton was not similarly situated to Mr. Mason at the time, because unlike Mr. Mason, Ms. Hutton did not hold a Master's degree in or around March of 2016.

14. At or around the time of Mr. Mason's demotion, he complained to Vice President of Human Resources Christi Green that he did not believe that demotions such as the one to which the defendant had subjected him were being imposed on any employees similarly situated

to him at the Hospital. Vice President of Human Resources Green did not respond to Mr. Mason regarding his concern.

15. In or around the summer of 2016, Ms. Pray would treat Mr. Mason with disfavor (compared to the manner in which she treated the other female employees on the case management team) at the morning meetings that the case management team would attend with doctors to discuss patient discharge plans. Ms. Pray would subject Mr. Mason to a barrage of questioning regarding his patients, only stopping when she managed to stump him with a question. Ms. Pray did not subject any female employee on the case management team to such withering questioning.

16. In or around September of 2016, Mr. Mason received an unfavorable performance review completed by Ms. Pray containing "needs improvement" ratings. Mr. Mason again complained to Vice President Green in Human Resources. Mr. Mason told Vice President Green that he believed Ms. Pray was targeting him because he was a man. Neither Vice President Green, nor anyone else in Human Resources, took any action in response to Mr. Mason's complaint.

17. Shortly after Mr. Mason alleged sex discrimination against Ms. Pray to Human Resources, Ms. Pray placed Mr. Mason on an unwarranted performance improvement plan that started in or around October of 2016.

18. Mr. Mason successfully completed the performance improvement plan in or around December of 2016.

19. Ms. Pray subjected Mr. Mason to further unwarranted criticism in April and May of 2017. In or around April of 2017, Ms. Pray reprimanded Mr. Mason for "not following up with a patient." Mr. Mason explained to Ms. Pray that another case manager had followed up

with that particular patient. The other case manager confirmed this fact to Ms. Pray. Ms. Pray nonetheless chastised Mr. Mason in a May 16, 2017, e-mail, writing: "On April 27 I spoke with you about not following up with a patient before rounds from an item from the prior day impacting a patient decision and discharge planning. As we discussed in December on your action plan, as a reminder you need to sustain coming to rounds prepared to discuss your patient assignment, specifically, providing quick updates on known patients." Exhibit A. Ms. Pray placed the May 16, 2017, e-mail in Mr. Mason's personnel file, indicating her intent to use the e-mail to document purportedly unsatisfactory job performance by Mr. Mason. Notably, Ms. Pray failed to mention in the e-mail that another case manager had performed the follow-up that Ms. Pray faulted Mr. Mason for not doing—and that Mr. Mason and the other case manager had apprised Ms. Pray of this fact, exculpating Mr. Mason.

20  In the same e-mail, Ms. Pray reprimanded Mr. Mason for another incident in which he had acted properly, and Ms. Pray had known his conduct was proper. "On May 9 and 15," Ms. Pray wrote, "I spoke with you about physician and family member/care giver dissatisfaction with a discharge, not following process and not having actually spoken with the physician and family member in a timely manner in preparing for the discharge." Id. Ms. Pray characterized the omission of which she accused Mr. Mason as a failure on his part to continue to meet the requirements of the performance improvement plan he had completed in December. Id.

21. Before Ms. Pray sent this reproving e-mail, Ms. Pray had confirmed to Mr. Mason in a meeting that the fault for the incident in question lay with Dr. Elias, not with Mr. Mason. Mr. Mason conferred with Dr. Elias regarding the subject patient's discharge, after Mr. Mason learned from nursing and physical therapy that the patient was safe for discharge. Dr. Elias, agreeing with Mr. Mason that the patient was ready for discharge, advised Mr. Mason that the

doctor would complete the discharge summary. Unbeknownst to Mr. Mason, however, Dr. Elias had privately promised the patient's daughter that the patient could remain in the hospital another two (2) days or so while the patient's daughter traveled out of State. Dr. Elias lacked the authority to make such a promise, however, because patients cannot remain in the hospital when no medical justification exists for them to remain there.

22. When Mr. Mason called the patient's daughter to inform her that the patient would soon be discharged and would need to be picked up, the patient's daughter became upset. She berated Dr. Elias when she arrived at the hospital to pick up her mother.

23. The incident led to a meeting between Ms. Pray, Mr. Mason and Dr. Elias, at which meeting Ms. Pray confirmed that fault for the daughter's discontent lay with Dr. Elias for making a promise that the doctor lacked authority to make.

24. Notwithstanding that Mr. Mason bore no fault for this incident, Ms. Pray imputed fault to him in the May 16, 2017, e-mail that she placed in his personnel file.

25. Mr. Mason e-mailed Ms. Pray a rebuttal to her May 16, 2017, e-mail. Notwithstanding the provisions of RSA 275:56, II, requiring employers to include such rebuttals in employee personnel files, Ms. Pray failed to include Mr. Mason's rebuttal in his personnel file.

26. The unwarranted discipline caused Mr. Mason to fear that his employment may be in jeopardy. So, Mr. Mason reported to Ms. Pray's supervisor, Vice President of Patient Care Services John Levitow, that he believed Ms. Pray was subjecting him to harassment. Vice President Levitow advised Mr. Mason that he would refer Mr. Mason's concerns to Human Resources.

27. Neither Human Resources nor anyone else associated with Frisbie ever contacted Mr. Mason in response to the concerns he expressed to Vice President Levitow in or around late May of 2017.

28. Frisbie next sought to blame Mr. Mason for "poor judgment" in connection with an incident in which Mr. Mason had simply followed his legal obligation to honor a patient's wishes and privacy rights when the patient instructed Mr. Mason not to notify his sister of his impending discharge. The patient in question had undergone a joint replacement, and had then been discharged to a skilled nursing facility for rehabilitation, where unfortunately the patient had developed an infection, leading to the patient being readmitted to Frisbie for treatment of the infection. During the patient's hospitalization at Frisbie, the patient not only received treatment for his infection but also received treatment from the Frisbie rehabilitation staff. The patient's condition improved so greatly that not only did the patient's treating physician deem him safe for discharge but the patient's health insurance carrier declined to approve his readmission to a skilled nursing facility. When Mr. Mason conveyed this news to the patient, the patient informed Mr. Mason that he would go home. Mr. Mason then asked the patient whether the patient wanted him to notify the patient's sister. The patient told Mr. Mason that he did not want his sister notified but that he would call her himself. The patient's unequivocal instruction to Mr. Mason not to notify his sister prevented Mr. Mason from returning calls placed by the patient's sister regarding the patient's discharge.

29. Ms. Pray summoned Mr. Mason to a June 20, 2017, meeting regarding this particular patient, after Frisbie reportedly received a letter from the patient's sister allegedly faulting Mr. Mason for poor planning in connection with the patient's discharge and for not returning her calls. Mr. Mason explained in the meeting that the patient's unequivocal

instructions prevented him from communicating with the patient's sister regarding his discharge. Despite the fact that Mr. Mason had no choice but to honor the patient's wishes, Ms. Pray faulted him for "poor judgment."

30. During the time that Mr. Mason reported to Ms. Pray, she made several hires. All the employees she hired were female.

31. Frisbie fired Mr. Mason on July 21, 2017, informing him that he was not eligible for rehire.

32. Frisbie hired a female case manager to replace Mr. Mason. Frisbie first offered the position to Cheryl Neiverth, who reportedly declined the position. Frisbie ultimately hired Lisa Gauthier to fill the position.

33. On or about January 5, 2018, Mr. Mason timely filed a Charge of Discrimination with the New Hampshire Commission for Human Rights and the United States Equal Employment Opportunity Commission alleging sex discrimination and retaliation. Exhibit B.

34. After the Charge of Discrimination was pending in said administrative agencies for more than six (6) months, Mr. Mason requested that the EEOC issue a Notice of Right to Sue. Exhibit C. Mr. Mason received the Notice of Right to Sue on June 5, 2020.

35. Mr. Mason files the instant Complaint within ninety (90) days of receiving said Notice of Right to Sue, as required.

## COUNT I

### (Sex Discrimination in Violation of Title VII)

36. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

37. Mr. Mason is male.

38.     Mr. Mason was qualified for his employment position and performed his job duties well, as reflected by his history of receiving positive performance evaluations from Frisbie before the installation of Ms. Pray as his supervisor.

39.     Mr. Mason suffered adverse employment actions at the hands of his employer, including without limitation demotion with a corresponding block on his eligibility for salary increases, unreasonable scrutiny to which his female co-employees were not subjected, unwarranted criticism, unwarranted placement on performance improvement plans, and ultimately termination.

40.     Frisbie filled Mr. Mason's position with a female, demonstrating a causal connection between Mr. Mason's sex and the adverse employment actions he suffered.

41.     As a direct and proximate result of the illegal sex discrimination to which Mr. Mason was subjected, Mr. Mason has suffered and continues to suffer damages, including without limitation lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Mr. Mason is further entitled to punitive damages based on the defendant's malice and/or reckless disregard for his federally protected rights, plus attorney's fees and costs.

## COUNT II

### (Retaliation in Violation of Title VII)

42.     The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

43.     Mr. Mason engaged in protected conduct under Title VII, complaining to Vice President of Human Resources Green in or around September of 2016 that he believed that Ms. Pray was discriminating against him because he was a man, and complaining to Vice President

of Patient Care Services Levitow in or around May of 2017 that Ms. Gray was subjecting him to harassment.

44. Mr. Mason suffered several adverse employment actions as a result of his protected conduct. Ms. Pray placed Mr. Mason on an unwarranted performance improvement plan shortly after he complained to Vice President of Human Resources Green that he believed she was discriminating against him because he was a man. Then, Frisbie subjected Mr. Mason to unwarranted criticism, unwarranted discipline and ultimately termination, all within two (2) months of Mr. Mason reporting to Vice President of Patient Care Services Levitow that Ms. Pray was subjecting him to harassment.

45. As a direct and proximate result of the retaliation to which Mr. Mason was subjected, Mr. Mason has suffered and continues to suffer damages, including without limitation lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Mr. Mason is further entitled to punitive damages based on the defendant's malice and/or reckless disregard for his federally protected rights, plus attorney's fees and costs.

WHEREFORE, the plaintiff Mark Mason respectfully prays this Honorable Court;

A. Schedule this matter for trial by jury, and after trial;

B. Find the defendant liable for sex discrimination in violation of Title VII;

C. Find the defendant liable for retaliation in violation of Title VII;

D. Award the plaintiff damages for lost wages, lost employment benefits, and lost earning capacity;

E Award the plaintiff compensatory damages;

F. Award the plaintiff punitive damages;

G. Award the plaintiff his reasonable attorney's fees;

H. Award the plaintiff interest and costs; and

I. Grant such other and further relief as is just and equitable.

Respectfully submitted,

MARK MASON
By his attorneys
DOUGLAS, LEONARD & GARVEY, P.C.

Dated: August 6, 2020  By: /s/ Benjamin T. King
Benjamin T. King, (NH Bar #12888)
14 South Street, Suite 5
Concord, NH 03301
P: (603) 224-1988
F: (603) 229-1988
benjamin@nhlawoffice.com